## Layng *against* Stewart.

If an agent exceed his authority in making a contract, he thereby binds himself individually, but his principal is not bound.

The clause in a bill of lading " he" (the consignee) " paying freight" is introduced for the benefit of the carrier, and does not exempt the consignor from liability.

ERROR to the Common Pleas of *Dauphin* county.

Robert Stewart against George W. Layng. This was an action on the case in which the court below thus stated the facts and charged the jury :

PARSONS, President.—This is an action of *assumpsit*, brought by the plaintiff against the defendant, for carrying between 55 and 60 hundred weight of goods from Harrisburg to Indiana, Indiana county, in this state, at the price and sum of $2.25 per 100 pounds. It appears from the evidence in the cause, that a quantity of goods were shipped from Philadelphia to this place, by David Ralston, to the care of the defendant, who keeps a warehouse, and is engaged in the forwarding business ; that about the time the goods arrived here, Ralston appeared and paid the freight to this place ; that he left these goods here, and instructed Mr Layng not to forward the goods, that he would send teams for them, and that the goods should be kept in store till he ordered them. Some of the goods were directed to J. & T. S. Mitchell, and some to Samuel Todd, and they were in the charge or under the care of Ralston. Under these circumstances, the plaintiff entered into a parol contract with the defendant to carry a load of these goods, directed to the persons above named, at the rate of $2.25 per hundred, at the instance and by the request of the defendant. At the time the contract was made, Mr Layng did not state that he was contracting for any other person, nor did he disclose, from the evidence in the cause, that he was acting as agent of any other person, nor did he allege but that he was contracting for himself. The goods were loaded upon plaintiff's wagon ; after he had loaded them, a bill of lading was made out and given to the plaintiff. By that bill, he was to deliver those goods, designated in the same, to the persons named in the bill as to whom they were so directed, on their paying the freight at $2.25 per hundred weight. On this state of facts alone, by the plaintiff accepting that bill under those specific terms in the bill, he was bound to look to the consignee, the persons to whom the goods were

directed, or hold on to the goods until his freight was paid; he had a lien upon the goods, and it was a part of the contract contained in the bill, which we construe as the last and whole contract between the parties, that he would deliver them only on the carriage being paid for; and if the case stood upon those facts and that contract alone, we should feel compelled to instruct you, as matter of law, that the plaintiff could not recover; for the contract of the parties, when expressed, is the law of the case, and all are bound by it. He should, under the situation of the parties as they then were, have retained the goods till his freight was paid, or deliver them and sue the owner for his pay. But there is another fact which I have mentioned, and others proved by the plaintiff, which place the case upon another principle.

It seems that Ralston had the charge of the goods, and was the owner, or part owner, and agent of the real owners, and specially instructed Mr Layng not to forward the goods from his warehouse by any conveyance, without special directions from Ralston, on the allegation that he was about to send his teams for them, and did send his teams for them while Stewart was carrying them out to their destined places, and on that account the owners or receivers of the goods refused to pay the plaintiff when he delivered them. When they refused to pay the carriage, the plaintiff might have retained the goods till the carriage was paid, but he was not bound to do so. He did, if the evidence is believed, deliver the goods.

As the law in the case, we instruct this jury, if they believe that Ralston had the charge of the goods, to convey them from Philadelphia to Indiana, and left the goods in charge of the defendant in Harrisburg, with express instructions that he should not send them, or forward them by any teams but his own, or by the order of Ralston; and in violation of those instructions, he did forward them; and without the consent of Ralston, or by his order, did contract with the plaintiff, as testified to by John Barnett; notwithstanding Stewart accepted the bill of lading, the plaintiff is entitled to your verdict, if you believe he carried the goods and delivered them at the place and to the persons directed.

Mr Layng had no right under the facts above stated to have sent the goods in the manner he did. Having chosen to violate these instructions, and if he did, and Ralston, or those who received the goods, refused to pay the freight, and not choosing to retain them by virtue of his lien, he can never resort, under such circumstances, to the defendant for his pay. The facts are for your determination, from the evidence before you.

But in order to defeat the plaintiff's right thus to recover, the defendant alleges that Ralston was not the owner of the goods, and Mitchell and Todd were the real owners; and that Ralston was only the agent of the owners; and after Ralston had given to Layng those instructions, the true owners of the goods came

here, and countermanded the instructions given by Ralston to Layng, and they directed him to send them by the first teams, or by the plaintiff, or any other teamster; and that in pursuance of such instructions, Layng did send these goods to the real owners, under the contract made with the plaintiff. Now, if the jury should believe that such are the facts, and that it was in pursuance of, and under the directions from, the real owners, he forwarded the goods by the plaintiff to them, under these circumstances, the plaintiff ought to have retained the goods until he got his pay from the owners; or, if he delivered them, his legal remedy is against them, and not the defendant.

This is a matter of fact for you to determine. Does the evidence in the case convince your minds that the goods were sent under the instructions of the real owners? Has it been proved who were the owners, or that they gave any such directions to Layng? Did they ever countermand or revoke the authority which they had given to Ralston? These are questions which the jury must decide from the evidence presented before them on this occasion. They are facts which the defendant must clearly establish to your satisfaction. Has he done so?

There is another position assumed by the plaintiff's counsel from the evidence, and which arises in the cause, which is this: that after the goods had been sent by the plaintiff's team, Ralston came here with his teams for the goods, and disapproved of the act of Layng in sending the goods by plaintiff, and denied his right so to do, alleging that he came with his own teams for them, and wanted loading back; that under these circumstances, Layng offered to furnish him with loading back which was destined to the same county, to which Ralston replied that he would take them, but it should be at the risk of Layng, who forwarded them, and that he should receive pay therefor from the persons who were to receive the goods, and that the defendant should settle with the plaintiff for his carriage of the goods that had been in the charge of Ralston.

Now, if you believe that such a contract was entered into by Layng, and under these circumstances he so agreed, then he is bound by that agreement, and this action is well brought against Layng for the carriage; and the plaintiff would, under such circumstances, be entitled to your verdict. It is for you to decide that question; we leave this question to you without comment.

You have heard the testimony of Joshua Fackler upon this subject; the court will read it to you. Does that evidence, combined with the other facts in the cause bearing upon that point, convince your minds that such was the promise and understanding of Layng? If so, he is bound by it, and it would not be unjust that he should pay it. We leave the matter with you to determine. If you find for the plaintiff, he is entitled to interest on the same, from the time this suit was brought.

[Layng v. Stewart.]

Errors assigned:

1. In stating to the jury that Layng, in making the contract for hauling the goods, did not disclose that he was acting as agent for any other person, nor did he allege but that he was contracting for himself.

2. In stating to the jury that Ralston was the owner or part owner of the goods.

3. In stating to the jury, as a fact proved, that the owners of the goods refused to pay for the carriage of the goods, because Ralston had especially instructed Mr Layng not to forward the goods from his warehouse, by any conveyance without especial instructions from Ralston, &c.

4. Also, that when the owners of the goods refused to pay the carriage, the plaintiff was not bound to retain the goods till the carriage of them was paid.

5. Also, to that part of the charge, wherein the court instruct the jury that the instructions of Ralston to Layng, in relation to the goods, affected and controlled the contract between Stewart and Layng for the carriage of the goods.

*Rawn*, for plaintiff in error. A consignor, who does not own the goods, nor ship them for his own use, is not liable for the carriage of them. 17 *Johns.* 334. The plaintiff now sues against the terms of his own contract, and the court erred in their charge to the jury that the instructions of Ralston to the defendant altered it. *Jones on Bailment* 105; 3 *Esp. N. P.* 114.

*J. A. Fisher*, for defendant in error, cited 28 *Law Lib.* 164; 1 *Com. Cont.* 239; 3 *P. Wms.* 278; 1 *Yeates* 486; 9 *Serg. & Rawle* 223; 23 *Law Lib.* 158, 160.

The opinion of the Court was delivered by

Huston, J.—It might be sufficient in this case to say that the errors assigned are all in matters of fact; and that they do not fairly represent what the judge said. The judge stated the facts as sworn to on each side; and, when the testimony was material, read it to the jury; and if in doing this he mistakes what a witness said, or omits the testimony of a material fact, if the counsel will respectfully state to the judge, when he has concluded his statements of the evidence, or when he has concluded his charge, and name the witness whose testimony he has mistaken or omitted, a judge will always recur to it, and state it correctly; but in this case, and generally in this district, the judge submits distinctly to the jury, in some part of his charge, whether they believe the witnesses or not; and did so pointedly in this case. Mr Layng employed Stewart and another man to carry, by wagons, store-goods from Harrisburg to Indiana; and it was distinctly sworn to, that he told the wagoners the goods were for a Mr

I. — 29

Ralston. It was not denied that Ralston put the goods into Layng's warehouse, and under his care. It was zealously contended, that a warehouseman, notoriously not the owner, who forwards goods, and gives a bill of them to be delivered on payment of carriage, as was done in this case, is not liable to the carrier for his hire — and so the judge expressly told the jury — but no rule is so general, that a state of facts may not exist, which make it an exception to the rule. It was distinctly testified by two witnesses, that when Ralston left the goods, he told Layng not to forward them, that he would send teams for them. Before Stewart arrived at Indiana, the owners of the goods, for Ralston was acting for others beside himself, had loaded five wagons with clover-seed, flaxseed, &c. &c., and sent them on; and they were on their return to take the store-goods at Layng's to Indiana. Layng's clerk swore, that before Layng put the goods into Stewart's wagon, he reminded him of Ralston's orders not to send the goods on; that he would send teams for them. About thirty miles on this side of Indiana, Ralston, who had sent on his five teams several days previous, met Stewart and the man who was with him, also loaded as Stewart was. After hearing that they were loaded by Layng, he asked for their bills of lading, on which he wrote directions to one of the owners, to receive the goods, but not to pay the carriage — he would settle that with Layng. He also requested to assist in getting a return load for the wagoners. The plaintiff below, Stewart, brought a receipt for the delivery of the goods. When he returned, Layng told him " he ought to have held on to the goods." To have kept the goods in his wagon, and staid with his team, to have rented a room and employed a person to take care of them, or to have brought them back in his wagon, would not have been to the advantage of Layng. Ralston came to this place, and Stewart sued him; but on ascertaining the facts, he abandoned that suit, and brought this action. It is not worth while to be learned on very plain matters. The cases cited show that, if an agent goes beyond his authority, and employs a person, his principal is not bound, and in such case the agent is bound. Here Layng went directly contrary to the directions of Ralston; and he himself was bound to pay Stewart for his labour — no other person was bound.

The cases everywhere show that the clause, " he paying freight," is introduced for the benefit of the carrier, not of the consignor; no case has shown that the master is to keep his ship and sailors at expense in a foreign port, or a wagoner is bound to stay with his team, or hire a house in a distant town, until he. tries a law suit. There may be cases in which he cannot recover against his consignor; but this is not one of them. I will here observe that in the case in 10 *Watts* 384, in the second sentence of the opinion of the court, it was ruled upon the authority

[Layng v. Stewart.]

of (a number of cases there cited) that the stipulation in a bill of lading, for delivery on payment of freight, is *not* introduced for the benefit of the consignor, &c. The word 'not' is omitted by the printer, but this would be apparent to the attentive reader.

Judgment affirmed.