### WILLIAM JEFTS & wife *vs.* SIMEON D. YORK.

A promissory note, in the body of which A. promises to pay a certain sum, and signed " B. agent for A.," does not bind B. personally on the contract, although he had no legal authority from A. to give such note.

In this commonwealth, a Congregational church, or a church formed within the congregation by covenant and according to usage, to celebrate the Christian ordinances, and for ecclesiastical purposes, with deacons chosen by the members, is

Jefts & wife *v.* York.

not a corporation, and cannot authorize an agent to bind them by a promissory note in their associate capacity.

If the consideration of a note by an agent is money advanced to him for the use of his principal, under a mutual mistake of the legal capacity of the principal to authorize the giving of such note by his agent, and the lender, finding that neither the principal nor the agent are legally bound upon the note, demands the money of the agen. before it is paid over to his principal, he may recover it of the agent, in an action for money had and received.

Assumpsit upon the money counts, with a specification of claim, under the count for money had and received, for one hundred dollars and interest, which the female plaintiff while sole, by the name of Betsey Tilton, advanced to the defendant, October 14, 1842.

At the trial in the court of common pleas, before *Mellen,* J. the plaintiffs produced and relied upon a note, of the following tenor: "Lowell, October 14, 1842. $100. For value received, the pastor and deacons of the First Freewill Baptist Church in Lowell, in behalf of said church, promise to pay Betsey Tilton, or her order, the sum of one hundred dollars; to be paid in two years, if called for, by giving one month's notice, with interest annually. S. D. York, Agent for the First Freewill Baptist Church in Lowell." In addition to the note, the signature to which was admitted, the plaintiffs proved an oral admission by the defendant of his receipt of the money, and that he expected to pay the note, at a month's notice.

The defendant contended that he signed said note merely as agent of the said church, a religious association of individuals, or as agent of the pastor and deacons of said church, and that being duly authorized so to do, he was not personally liable on the note; and he offered evidence tending to show the votes of said church, directing him to give the note in suit. The particulars of this testimony, as also several other questions raised at the trial, did not become material to the final decision of the case. Upon the whole evidence, the presiding judge instructed the jury, among other things, that the note in suit was, in its legal construction, the note of the church, and that, as no authority had been shown in the church to give such note, the defendant acted therein without

legal authority; and that the defendant, if he received the money himself, would be liable under the count for money had and received, and the jury returned a verdict for the plaintiffs. To this ruling the defendant excepted.

*R. B. Caverly,* for the defendant.

*B. F. Butler,* for the plaintiffs.

SHAW, C. J. We suppose this is the same case in which a new trial was formerly ordered, which is reported in 4 Cush. 371. The object of this suit is to charge the defendant personally, in consequence of his having received of the female plaintiff, whilst sole, the sum of $100, by way of gift, deposit or loan, for the Freewill Baptist Society, upon which he gave her a note or memorandum in writing, as stated in the report referred to. We say gift or loan, because, by the terms of the note, it was only to be paid, if called for.

The former decision only determined that, by the law of Massachusetts, contrary to the rule in some other states, a person, professing to act as agent for another party, but either in law or in fact having no authority to bind such party, he does not necessarily bind himself.

In the present case, it seems to have been assumed, and if it had not, it seems to us clear as matter of law, that the church or the deacons of the church, had no authority to give a promissory note, or enter into an executory contract for the payment of money, binding upon themselves and their successors, in their corporate capacity. This appears to be the case of a regularly incorporated religious society, in its nature and constitution congregational, a church formed within the congregation, by covenant and according to usage, to celebrate the Christian ordinances, and for purposes purely ecclesiastical, with deacons chosen by the members. It has often been held in this commonweath, that such a church is not a corporation, and can neither contract nor sue in a corporate capacity. And although the deacons are vested by statute with limited corporate powers to take gifts and donations and hold property in succession, for the benefit of the church, yet we are not aware of any authority they have to issue promissory notes, to bind their successors or the church, or

to enter into executory contracts, negotiations, or speculations, although they may hope and expect that they will prove profitable to the church. Perhaps it may be thought that the court adopted a different rule, in regard to this same society, in the case of *Townsend* v. *Freewill Baptist Society*, 6 Cush. 279. But it will be found on examination, that the suit there was brought against the incorporated society, by the name of the Freewill Baptist Church, or, if in fact it was intended to charge the church proper, the plaintiffs had declared against them as a corporation, the defendant had not pleaded in abatement, or given the necessary notices to traverse and try the fact of their being a corporation, so that the suit proceeded against them as a corporation. We then are brought back to the question whether the agent is personally liable. The court are of opinion, that where a person acting as agent, borrows money for his principals, and gives their obligation for it, and it turns out that the principals were not of legal capacity to make such contract, and of course could confer no such power on another, the agent is not personally liable on the contract, as his contract. This in effect was before decided in the same suit between these parties. 4 Cush. 371; *Abbey* v. *Chase*, 6 Cush. 54.

But if in fact he was not so authorized, but under a belief that he was, and acted on such belief, and the party advancing the money did not know that he was not authorized, the agent would be liable in an action of the case, to an amount in damages equal to the sum advanced. If one falsely represents that he has an authority, by which another, relying on the representation, is misled, he is liable; and by acting as agent for another, when he is not, though he thinks he is, he tacitly and impliedly represents himself authorized without knowing the fact to be true, it is in the nature of a false warranty, and he is liable. But in both cases his liability is founded on the ground of deceit, and the remedy is by action of tort. *Smout* v. *Ilbery*, 10 Mees. & Welsb. 1; *Jenkins* v. *Hutchinson*, 13 Ad. & El. N. S. 744.

But if the defect of authority arises from a want of legal capacity, and if the parties act under a mutual mistake of the

law, and are both equally well informed in regard to the facts, so that the lender is not misled by any word or act of the agent, he would have no legal remedy against the agent; not in assumpsit, for it is not his contract; not in tort, for he is chargeable with no deceit. It is the ordinary case of a person lending money to any aggregate body of individuals not incorporated, associated temporarily for any purpose of business, who by a vote of the majority engage to repay him, he erroneously supposing that they are all legally bound. He can have no remedy against them, simply because, by a fixed rule of law, an aggregate body, not incorporated, cannot act and bind the association by a majority, or sue, or be sued, in an aggregate capacity.

But it is then contended, that the defendant is liable to the plaintiffs as for so much money had and received by him to their use; and there is a count in the declaration, sufficient to enable the plaintiffs to recover in this suit, if their proof will warrant it. There is a state of facts, which, if it existed, might lay the foundation for such a right to recover the money back. In the case supposed, of a receipt of money for another party under a mutual mistake of the law, and a belief, on the part of both, that the agent had authority to bind the principal by a contract, if before the agent has paid over the money or applied it to the use of his supposed principal, or otherwise put it out of his own control, the mistake is discovered, and the lender gives notice to the agent, not to pay it, but return it, it then becomes money held to the use of the lender, and may be recovered back in *indebitatus assumpsit.* The ground is, that although the arrangement fails as a contract, yet it amounts to an authority from the lender to the agent, to pay it or apply it to the use of the principal, if delivered to him for that purpose, though under a mutual mistake as to his power to contract. But it is a naked power, in its nature revocable, and if the owner revoke the power and reclaim the money, the agent holds it as money received on a consideration which has failed, to the use of the lender, and if after that notice the agent parts with it, he does it in his own wrong, and is still liable for it to the lender. This rule will

extend to a case where the agent has in fact received the money under such mutual mistake of the law, but has never, before such notice, accounted for it to his supposed principal, nor otherwise changed his condition for the worse, towards his supposed principal, but has actually retained the money, or applied it to his own use.

If the plaintiffs think it expedient to go to a new trial on that ground, the question for the jury will be,

1. Whether the parties acted under a mutual mistake of the law, and were equally conusant of all the facts, on which the defendant's want of authority depended. The general law of the land, all parties are presumed to know; and the fact, that both parties attended the same church, and knew their plans and purposes, in asking aid from the members, is proper evidence to be submitted to the jury upon the question whether they were equally conversant with the facts.

2. The other question will be, whether the defendant had in fact paid over the money, or applied and appropriated the same to the use of the Freewill Baptist Church, and thus put it out of his own control, before receiving any notice from the plaintiffs not to pay it, or any demand to have it repaid. If so, it cannot be recovered back; but if otherwise, it was money had and received by the defendant to the plaintiffs' use, and may be recovered in this action.

*New trial in this court.*