# Kroeger *versus* Pitcairn.

1. Whenever any party undertakes to do any act as the agent of another, if he does not possess any authority from the principal therefor, or if he exceeds the authority delegated to him, he will be personally liable to the person with whom he is dealing for and on account of his principal.

2. Where such party undertakes to act as an agent for his principal bona fide, believing that he has authority to enter into the contract in question, he is nevertheless personally responsible if he has exceeded his authority.  The fact that he has been guilty of no intentional fraud or moral turpitude does not exempt him from liability.

3. A., the agent for an insurance company, solicited B. to allow him to effect an insurance upon certain store premises belonging to the latter. B. assented, whereupon A. procured a policy and handed it to B. receiving the premium.  At the time of receiving the policy B. observed therein a condition providing that if petroleum should be kept on the premises insured, without the written consent of the company the policy should be void.  B. then remarked to A. that he was obliged to keep a little petroleum on the insured premises, and asked whether this fact ought not to be noted on the policy ?  A. replied that the policy was all right, and that so long as a single barrel of petroleum only was kept on the premises it was never taken notice of; that it was only when it was kept in large quantities that it should be noted on the policy.  B. took said policy on the faith of A.'s representations as above, and subsequently a loss having occurred thereunder sued the company.  On the trial, it appeared that B. had kept a barrel of petroleum on the premises and the policy was accordingly held to be avoided, A. having had no authority to waive the conditions thereof.  B. thereupon brought an action of deceit against A. to hold him personally liable for the loss.  *Held*, that defendant had given a positive assurance in excess of his authority and was liable accordingly.

101  311
150  117

101     311
f 28 SC 516

101     311
36 SC 350

101  311
41SC 352

[Kroeger *v.* Pitcairn.]

October 13th 1882. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey and Sterrett, JJ. Green, J., absent.

Error to the Court of Common Pleas No. 2 of *Allegheny county :* Of October and November Term 1882, No. 110.

Case, by W. C. Kroeger against Albert Pitcairn, to recover the amount of the loss sustained by the plaintiff in consequence of certain acts and representations made by defendant.

On the trial, before Kirkpatrick, J., the following facts appeared : On April.4th 1874, The Birmingham Fire Insurance Company issued a policy of insurance to William C. Kroeger, the plaintiff, " on his stock of merchandise and fixtures contained in the two-story frame store-room and cellar and in frame addition attached, situated at Enon Coal Company's works, about two miles west of Enon, &c."

One of the printed conditions of the policy was in these words : ".Or if the assured shall keep or have in any place or premises where this policy may apply, petroleum, naptha, benzine, benzole, gasoline, benzine varnish, or any product in whole or in part of either ; or gunpowder, fireworks, nitro glycerine, phosphorus, saltpetre, nitrate of soda, or keep, have, or use camphene, spirit gas, or any burning fluid or chemical oils, without written permission in this policy, then and in every such case this policy shall be void."

In December, 1874, the premises so insured were totally destroyed by an accidental fire. Due notice was give the insurance company and preliminary proofs furnished, but the company refused to pay. An action was then brought on the policy and a judgment recovered to the amount of twenty-one.hundred dollars. That.judgment this court reversed. It had appeared on the trial that a barrel of carbon oil had been kept on the premises, and this was held to be an avoidance of the policy : Birmingham Fire Ins. Co. *v.* Kroeger, 2 Norris 64.

Albert Pitcairn, the defendant, was the insurance company's agent who procured the issue of the policy. He solicited Kroeger to allow him to effect the insurance ; went upon the premises, examined them, furnished the description of them, and had the policy underwritten, bringing it with his own hand to Kroeger, from whom he collected the premium. What took place at that time was thus testified to by Kroeger : " He procured the policy and brought it to me ; I took the policy and read it over, and in reading it over I happened to come across this fine print and noticed about these articles that should be mentioned in the policy—such as petroleum, and product of petroleum, and gasoline, and other things, I don't know what they call them, all strange names to me, and I told him about petroleum ; says I, " Albert, you know there is a little petroleum kept there for the supplies to the mines ;" I had to have that there all the time, as.

[Kroeger v. Pitcairn.]

well as company supplies. He said, "Yes, I know that." Says I, "It says here it should be mentioned in the policy," and he says, "That is never taken notice of, only where it is kept in large quantity, say several hundred barrels; in that case, where it is wholesale, it should be mentioned, but so long as it is not kept more than one barrel in the store at a time, it is considered as general merchandise and it is never taken notice of in any other way."

Cross-examination.—"The outcome was as I say; I objected to the policy on account of the way it was in the fine print; it seemed to me it was not proper, and I spoke to Mr. Pitcairn about that and he said that the policy was proper, that the policies were all made out in that way; that carbon oil, as long as it was not kept more than one barrel in the store, was considered as general merchandise and not mentioned in the policy, but where it was kept in large quantity, a hundred barrels or so, then it must be so mentioned, and exception made of it."

It was conceded that Pitcairn, all through, acted as the agent of the insurance company. He admitted that he had no authority from his principal to represent to Kroeger that the printed condition as to petroleum was not binding, except where oil was kept wholesale.

Plaintiff requested the court to charge that if the jury believed from the evidence that the defendant made to plaintiff the representations testified to by the latter and that the latter took said policy upon the faith thereof; and that the defendant had no authority from the Birmingham Fire Insurance Company to make such representations; that the premises insured were subsequently destroyed by fire, and that because of the terms of the policy in suit relating to petroleum, the plaintiff failed in a recovery against said company, because of having a barrel of carbon oil on the premises, then, he is entitled to recover against the defendant in this action the amount of the policy, with interest, from time of payment provided in said policy.

Affirmed pro forma.

Defendant then presented the following points.

1st. To sustain this action, the alleged misrepresentations must not only have been false, but it must be shown that defendant knew them to be false, and made them with intent to defraud the plaintiff.

Refused pro forma.

2d. That the alleged representation was the mere opinion of defendant as to the legal effect of the condition in the policy of insurance, and the conditions of the policy being open to the observation of plaintiff, plaintiff was bound to know the legal effect thereof, and cannot, for such opinion of defendant, recover in this action.

[Kroeger *v.* Pitcairn,]

Refused pro forma.

3d. That if, when defendant, as agent of the Birmingham Insurance Company, delivered the policy to plaintiff, he made the alleged representation as to the keeping of carbon oil in the insured premises, and made them in accordance with the existing custom of that and other insurance companies in insuring stocks of merchandise in country stores, then plaintiff cannot recover.

Refused pro forma.

The court instructed the jury to find for the plaintiff reserving the points presented as above. Verdict accordingly. Subsequently the court entered judgment for the defendant on the points reserved non obstante veredicto. Thereupon the plaintiff took this writ, assigning for error the action of the court in entering judgment for defendant non obstante veredicto.

*Dalzell* (with whom was *Hampton*), for the plaintiff in error. —It was not necessary in the above action for the plaintiff to show knowledge on the part of the defendant of his want of authority and an intent to defraud : Thomson *v.* Davenport, 2 Sm. & L. C. 364 ; Smout *v.* Ilberry, 10 M. W. 1 ; Collen *v.* Wright, 7 El. & Bl. 301 ; S. C., 8 El. & Bl. 646 ; Draper *v.* Massachusetts Steam Heating Co., 5 Allen 338 ; Jefts *v.* York, 10 Cush. 392 ; Baltzen *v.* Nicolay, 53 N. Y. 469 ; White *v.* Madison, 26 N. Y. 117 ; Dung *v.* Parker, 52 N. Y. 494 ; Layng *v.* Stewart, 1 W. & S. 226 ; Hampton *v.* Speckenagel, 9 S. & R. 222 ; McConn *v.* Lady, 10 W. N. C. 493.     It is clear that defendant cannot escape liability on the ground that plaintiff's action is founded only upon the defendant's statement of his individual opinion as to a question of law.     Defendant did not pretend to be giving an opinion.     He stated a fact.

The existence of a custom such as is claimed might, perhaps, excuse the defendant in believing that he had authority to contract with the plaintiff as he did ; but the fact still remains that he had no such authority, and if our former position be correct the want of authority is not helped at all by the honesty of the agent.   His liability is the same, whether he acted upon or without an honest belief.

*Schoyer* (with whom was *McGill*), for the defendant in error.—Defendant did not attempt to waive the conditions of the policy nor could he have done so.   He was merely stating what was the custom of insurance companies : Franklin Ins. Co. *v.* Updegraff et al., 7 Wright 350 ; People's Insurance Co. *v.* Spencer, 3 P. F. S. 355.

There being no evidence that defendant represented he had authority which he did not possess, or did anything in excess of any authority which he did possess, what he did say becomes a

question of good faith : Duff *v.* Williams, 4 Norris 495 ; Dilworth *v.* Bradner, Ib. 238.

There was no knowledge on the part of the defendant that he was exceeding his powers and no evidence of any intent on his part to deceive : Graham *v.* Hollinger, 10 Wright 55 ; Huber *v.* Wilson, 11 Harris 178 ; Bokee *v.* Walker, 2 Harris 139 ; Boyd's Executor *v.* Brown, 6 Barr 310 ; Hubbell *v.* Meigs, 50 N. Y. 480 ; Wackeman *v.* Dalley, 51 N. Y. 27 ; Smith *v.* Calvert, 44 Ind. 242 ; Frenzel *v.* Miller, 37 Ind. 1 ; Sawyer *v.* Mayhew, 51 Me. 398. These are essential to the maintenance of such an action as the present one.

Mr. Justice STERRETT delivered the opinion of the court, November 20th 1882.

The subject of complaint, in both specifications of error, is the entry of judgment for defendant non obstante veredicto. It is contended that upon the facts established by the verdict, judgment should have been entered thereon in favor of plaintiff. The jury were instructed to return a verdict for the amount claimed by him, if they were satisfied the allegations of fact contained in the point presented by him were true. In view of this, the finding in his favor necessarily implies a verification of the several matters specified in plaintiff's point, and hence it must now be regarded as containing a truthful recital of the circumstances connected with the delivery of the policy and payment of the premium.

The transaction, as therein detailed, clearly amounted to a mutual understanding or agreement between the parties that the stock of merchandise, mentioned in the policy, should include one barrel of carbon oil; in other words, that the plaintiff should have the privilege of keeping that quantity of oil in connection with and as a part of the stock insured, without thereby invalidating his policy. It is impossible to regard the transaction in any other light. The jury found that plaintiff "took the policy upon the faith" of the representations made by defendant. These representations were not merely expressions of opinion as to the meaning of the policy. On the contrary, the defendant, acting as its agent and assuming authority to speak for the insurance company, asserted without any qualification that when carbon oil was kept as plaintiff was in the habit of keeping it—a single barrel at a time—it was unnecessary to mention the fact in the policy, or otherwise obtain the consent of the company ; that no notice is ever taken of it unless "it is kept in large quantity—say several hundred barrels. In that case, when it is wholesale, it should be mentioned ; but, as long as it is kept, not more than a barrel in the store at a time, it is considered as general merchandise and is not taken notice of in

[Kroeger *v.* Pitcairn.]

any other way." Such was the language employed by defendant, evidently for the purpose of dispelling any doubt that existed in the mind of the plaintiff and inducing him to accept the policy and pay the premium; and, to that end at least, it was successful. What was said and done by defendant, in the course of the transaction, amounted to more than a positive assurance that the accepted meaning of the policy was as represented by him. In effect, if not in substance, his declarations were tantamount to a proposition, on behalf of the company he assumed to represent, that if the insurance was effected it should be with the understanding that a barrel of carbon oil was included in and formed part of the insured stock of merchandise, without being specially mentioned in the policy. The plaintiff doubtless so regarded his declarations, and relying thereon, as the jury has found, accepted the policy on the terms proposed, and thus concluded, as he believed, a valid contract of insurance, authorizing him to keep in stock, as he had theretofore done, a small quantity of carbon oil. It was not until after the property was destroyed that he was undeceived. He then discovered that, in consequence of defendant having exceeded his authority, he was without remedy against the company. Has he any remedy against the defendant, by whose unauthorized act he was placed in this false position? We think he has. If the president or any one duly authorized to represent the company had acted as defendant did, there could be no doubt as to its liability. Why should not the defendant be personally responsible, in like manner, for the consequences, if he, assuming to act for the company, overstepped the boundary of his authority and thereby misled the plaintiff to his injury, whether intentionally or not? The only difference is that in the latter the authority is self-assumed while in the former it is actual; but, that cannot be urged as a sufficient reason why plaintiff, who is blameless in both cases, should bear the loss in one and not in the other. As a general rule, "whenever a party undertakes to do any act as the agent of another, if he does not possess any authority from the principal therefor, or if he exceeds the authority delegated to him, he will be personally liable to the person with whom he is dealing for or on account of his principal:" Story on Agency 264. The same principle is recognized in Evans on Agency* 301; Whart. on Agency 524; 2 Smith's Lead. Cases 380, note; 1 Pars. on Cont. 67, and in numerous adjudicated cases, among which are: Hampton *v.* Speckenagel, 9 S. & R. 212, 222; Layng *v.* Stewart, 1 W. & S. 222, 226; McConn *v.* Lady, 10 W. N. C. 493; Jefts *v.* York, 10 Cush. 392; Baltzen *v.* Nicolay, 53 N. Y. 467. In the latter case, it is said, the reason why an agent is liable in damages to the person with whom he contracts, when he exceeds his

[Kroeger v. Pitcairn.]

authority, is that the party dealing with him is deprived of any remedy upon the contract against the principal. The contract, though in form that of the principal, is not his in fact, and it is but just that the loss, occasioned by there being no valid contract with him, should be borne by the agent who contracted for him without authority. In Layng v. Stewart, supra, Mr. Justice Huston says: "It is not worth while to be learned on very plain matters. The cases cited show that if an agent goes beyond his authority and employs a person, his principal is not bound, and in such case the agent is bound." The plaintiff in error, in McConn v. Lady, supra, made a contract, believing he had authority to do so, and not intending to bind himself personally. The jury found he had no authority to make the contract as agent, and this court, in affirming the judgment, said: "It was a question of fact submitted to the jury, whether the plaintiff in error had authority from the School Board to make the contract as their agent. They found he had not. He was personally liable whether he made the contract in his own name or in the name of his alleged principal. It is a mistake to suppose that the only remedy was an action against him for the wrong. The party can elect to treat the agent as a principal in the contract."

The cases in which agents have been adjudged liable personally have sometimes been classified as follows, viz: 1st. Where the agent makes a false representation of his authority with intent to deceive. 2nd. Where, with knowledge of his want of authority, but without intending any fraud, he assumes to act as though he were fully authorized; and, 3rd. Where he undertakes to act, bona fide believing he has authority, but in fact has none, as in the case of an agent acting under a forged power of attorney. As to cases fairly brought within either of the first two classes there cannot be any doubt as to the personal liability of the self-constituted agent; and his liability may be enforced either by an action on the case for deceit, or by electing to treat him as principal. While the liability of agents, in cases belonging to the third class, has sometimes been doubted, the weight of authority appears to be that they are also liable. In Story on Agency, the learned author, recognizing the undoubted liability of those belonging to the first two classes, says, "Another case may be put which may seem to admit of some doubt, and that is where the party undertakes to act as an agent for the principal, bona fide believing he has due authority, and therefore acts under an innocent mistake. In this last case, however, the agent is held by law to be equally as responsible as he is in the two former cases, although he is guilty of no intentional fraud or moral turpitude. This whole doctrine proceeds upon a plain principle of justice; for every person, so acting for another, by

[Lupton *v.* Moore.]

a natural if not a necessary implication holds himself out as having competent authority to do the act; and he thereby draws the other party into a reciprocal engagement. If he has no such authority and acts bona fide, still he does a wrong to the other party; and if that wrong produces injury to the latter, owing to his confidence in the truth of an express or implied assertion of authority by the agent, it is perfectly just that he who makes such assertion should be personally responsible for the consequences, rather than that the injury should be borne by the other party who has been misled by it:" Story on Agency, 264. This principle is sustained by the authorities there cited, among which is Smout *v.* Ilbery, 10 Mees. & Wels. 1, 9.

Without pursuing the subject further, we are of opinion that, upon the facts established by the verdict, judgment should have been entered for the plaintiff, on the question of law reserved.

Judgment reversed and judgment is now entered in favor of the plaintiff for $3,027.20, the amount found by the jury, with interest from January 20th 1882, the date of the verdict.