## Simpson *v.* Kerkeslager, Appellant.

*Bankruptcy—Receiver—Insurance—Payment of premiums—Mistake as to title—Personal liability of receiver.*

Where a receiver of a bankrupt firm is orally directed by the referee at a creditors'. meeting to insure certain real estate, and he complies with this request by placing the insurance with an insurance agent who is personally present at the meeting, and it turns out after the expiration of some time, and after the agent had paid over the premiums out of his own pocket to his company, that the building insured was not the property of the bankrupt, the receiver will be personally responsible to the insurance agent for the premiums paid by the latter.

Argued Oct. 13, 1909. Appeal, No. 140, Oct. T. 1909, by defendant, from order of C. P. No. 3, Phila. Co., Sept. T., 1908, No. 2,445, making absolute rule for judgment for want of a sufficient affidavit of defense in case of B. Mitchell Simpson et al., trading as William A. Simpson & Son, v. Milton W. Kerkeslager. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit against a receiver in bankruptcy to hold him personally liable for premiums paid for insurance of real estate. Before FERGUSON, J.

The affidavit of defense averred that on October 20, 1907, he was appointed receiver of the bankrupt firm of Isaac Wilde and George Daymon, trading as Robert Wilde's Son.

That at the time of the first meeting of said creditors as aforesaid and until July, 1908, the building and machinery contained therein and insured by said plaintiff was commonly believed to be the property of the bankrupt estate, such belief having been based upon the following statement, as it appeared in the books of the said bankrupt estate:

"May 1, 1905.

"Isaac Wilde and George C. Daymon, trading as Robert Wilde's Son, commenced business this day for the manufacture and sale of Carpet Yarns at Leverington avenue and Wilde St., Manayunk, Philadelphia.

"All profits and losses to be equally divided between them.

"Inventory at the commencement of business as follows:

| | |
|---|---:|
| Cash as per Cash Book | $ 673.37 |
| Real Estate as per Ledger | 21,000.00 |
| Machinery—Personal Property | 10,000.00 |
| Merchandise on Hand | 8,685.55 |
| Book Accounts | 2,665.09 |
| Mortgages | 21,500.00 |
| Book Accounts | 47,786.99 " |

It also appeared by "Schedule B, Statement of all Property of the Bankrupt," forming part of debtors' schedule, which was signed and sworn to by said George C. Daymon, and filed in the district court aforesaid, the said real estate and machinery contained therein was declared to be the property of said bankrupt estate. A true copy of said schedule, marked exhibit "A," is hereto annexed and made part hereof.

That after several meetings of the creditors of said bankrupt estate, at all of which considerable testimony was presented for the purpose of ascertaining the ownership of the real estate in question, the learned referee, Honorable Alfred Driver, on February 8, 1908, decided that said real estate was owned by Isaac Wilde individually and not by said bankrupt estate. Upon a petition to review the findings of said referee, filed by Brown Brothers, a creditor of said bankrupt estate, the district court in an opinion filed by Honorable Judge HOLLAND on July 8, 1908, confirmed the referee's order in the following:

Your petitioner is advised and believes and therefore avers that, in view of the aforesaid entry or statement made in the books of said bankrupt estate and of the sworn statement appearing in schedule B hereinbefore mentioned, it was his duty as receiver as aforesaid, to regard said real estate as the property of the bankrupt estate, until the ownership thereof had been judicially determined, and it was his duty in the exercise of his sound judgment to protect said real estate from loss by fire for the benefit of the creditors of said bankrupt estate.

Defendant denies that the bankrupt estate of Isaac Wilde

and George C. Daymon, trading as Robert Wilde's Son, for which estate the said defendant was and is receiver, was devoid of assets with which to pay the claim for which the suit was brought, but on the contrary, he received the sum of $900 from the sale of a lot of carpet waste, and on November 7, 1908, he filed his account of said sum in the said district court of the United States, which account is and has, since that time, been before the said referee, Alfred Driver, for audit.

Deponent avers that William M. Simpson, one of the above-named plaintiffs, was present at the first meeting of the creditors of Isaac Wilde and George C. Daymon, trading as Robert Wilde's Son, bankrupt, above particularly mentioned, and subsequently, about a week thereafter, called upon the said receiver to solicit an order for the fire insurance that was required, and to ascertain the manner in which said policies should be written, so that he had full knowledge of the fact that Milton W. Kerkeslager was appointed receiver and trustee of the said bankrupt's estate.

That as receiver of said bankrupt estate, your deponent, believing it to be his duty to preserve the said bankrupt estate and protect the interests of the creditors thereof, and acting under the express oral direction of the referee, Honorable Alfred Driver, ordered and requested said plaintiff to place fire insurance upon the building and the machinery contained therein, situate on the southwest corner of Leverington avenue and Wilde street, as aforesaid, said insurance policies to be in the name of "Milton W. Kerkeslager, Receiver, Owner."

That pursuant to said order and request, all the policies mentioned in said plaintiff's statement of claim were written and delivered by said plaintiff to said receiver in the name of said "Milton W. Kerkeslager, Receiver, Owner," and the premiums therefor were charged to said receiver.

The court made absolute rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was the order of the court.

*Daniel A. Stewart,* for appellant.—The doctrine of principal and agent has no application. A receiver is the agent of no one. He is an officer of the court appointing him, and is clothed with all the power and responsibility fitting such an appointment: Schwartz v. Oil Co., 153 Pa. 283; Walker v. Morris, 14 Ga. 323; Henry v. Kaufman, 24 Md. 1; Com. v. Young, 11 Phila. 606.

If the lower court is sustained, it is submitted that the risk of anyone acting in a fiduciary capacity would be extremely great, as his individual liability would be subject to attack upon the slightest provocation, and especially so where the estate of the decedent, ward, debtor, etc., ultimately proved to be insolvent.

*Frederick A. Sobernheimer,* for appellees.—The doctrine of "Principal and Agent" need not be "assumed" to be applicable to this case; it is applicable: Kroeger v. Pitcairn, 101 Pa. 311; Wolff v. Wilson, 28 Pa. Superior Ct. 511.

A receiver is liable to any person who sustains loss by reason of the receiver's negligence or misconduct with reference to the receivership property: McCay v. Black, 14 Phila. 635.

OPINION BY BEAVER, J., December 13, 1909: 

Assuming as facts the allegations of the defendant's affidavit of defense, the referee in bankruptcy directed the defendant, the receiver and trustee of the bankrupt estate of Isaac Wilde and George Daymon, copartners, trading as Robert Wilde's Son, to secure fire insurance upon certain real estate described in the schedule of the bankrupt estate, and that, in pursuance of said direction, the defendant, as receiver of the said bankrupt estate, ordered and requested the plaintiffs to place fire insurance upon the building and the machinery contained therein, situate on the southwest corner of Leverington avenue and Wilde street as aforesaid, said insurance policies to be in the name of Milton W. Kerkeslager, receiver, owner. That, at the meeting of the creditors of the bankrupt firm, one of the plaintiffs was present and "had full knowledge of the fact that Milton W. Kerkeslager was ap-

pointed receiver and trustee of the said bankrupt's estate."
"That, pursuant to said order and request, all the policies
mentioned in said plaintiff's statement of claim were written
and delivered by said plaintiff to said receiver in the name of
the said 'Milton W. Kerkeslager, receiver, owner,' and the pre-
miums therefor were charged to said receiver, as appears by
statement received by said receiver from said plaintiff."
"That, at the time said fire insurance policies were written,
placed or delivered, he (the receiver) had no insurable inter-
est in the said building and the machinery contained therein,
situate on the southwest corner of Leverington avenue and
Wilde street, as aforesaid, nor did he acquire any insurable
interest in said insured premises during the life of said several
policies."

The claim is, therefore, made that the plaintiffs' claim, as
set forth in said statement of claim, is upon Milton Kerkes-
lager, receiver of the bankrupt estate of Robert Wilde's Son
as aforesaid, and not upon the defendant as an individual.

Assuming that the referee in bankruptcy, the trustee and
receiver of the bankrupt estate, and the plaintiffs were all in
error as to the ownership of the property insured, it is clearly
apparent from the affidavit of defense that the defendant
allowed the policies to remain in full force during the period
for which they were written. It does not appear from the
affidavit of defense when the defendant discovered that he
had no insurable interest in the property insured; in other
words, that the title to the said property had not been in the
bankrupt estate prior to the adjudication in bankruptcy. It
would seem, however, from the absence of any allegation to
the contrary, that he had not apprised the plaintiffs of his
lack of insurable interest prior to the bringing of this suit, or
at least until after the policies of insurance had expired, nor
is there any denial on his part that the plaintiffs, as alleged
in their statement, had paid over the amount of the insurance,
less their commissions, to the companies entitled to receive
the same, in accordance with the bills rendered. The practi-
cal question, therefore, is, Upon whom shall the loss for the
payment of the insurance fall—upon the plaintiffs who were

ordered and directed to place said insurance by the defendant, or upon the defendant who gave the direction?

In Kroeger v. Pitcairn, 101 Pa. 311, Mr. Justice STERRETT, after stating the facts of the case, in which the plaintiff who had received a policy of insurance from the defendant, as agent, representing an insurance company, in and by which the plaintiff was allowed to keep in stock a certain amount of carbon oil and after the loss of his property it was discovered that such permission was not given by the policy or allowed by the company and an attempt was made to recover the amount of the insurance from the agent, says: "Why should not the defendant be personally responsible, in like manner, for the consequences, if he, assuming to act for the company, overstepped the boundary of his authority and thereby misled the plaintiff to his injury, whether intentionally or not? The only difference is that in the latter the authority is self-assumed, while in the former (that is in the case of a president or other officer of the company) it is actual; but that cannot be urged as a sufficient reason why plaintiff, who is blameless in both cases, should bear the loss in one and not in the other. As a general rule, 'whenever a party undertakes to do any act as the agent of another, if he does not possess any authority from the principal therefor, or if he exceeds the authority delegated to him, he will be personally liable to the person with whom he is dealing for or on account of his principal:' Story on Agency, 264. The same principle is recognized in Evans on Agency, *301; Whart. on Agency, 524; 2 Smith's Lead. Cases, 380, note; 1 Pars. on Cont. 67, and in numerous adjudicated cases, among which are: Hampton v. Speckenagle, 9 S. & R. 212, 222; Layng v. Stewart, 1 W. & S. 222, 226; McConn v. Lady, 10 W. N. C. 493; Jefts v. York, 64 Mass. 392; Baltzen v. Nicolay, 53 N. Y. 467. In the latter case, it is said, the reason why an agent is liable in damages to the person with whom he contracts, when he exceeds the authority, is that the party dealing with him is deprived of any remedy upon the contract against the principal. The contract, though in form that of the principal, is not his in fact, and it is but just that the loss, occasioned by there being

no valid contract with him, should be borne by the agent who contracted for him without authority. In Layng v. Stewart, 1 W. & S. 222, Mr. Justice HUSTON says: 'It is not worth while to be learned on very plain matters. The cases cited show that, if an agent goes beyond his authority and employs a person, his principal is not bound, and in such case the agent is bound.' The plaintiff in error, in McConn v. Lady, 10 W. N. C. 493, made a contract, believing he had authority to do so, and not intending to bind himself personally. The jury found he had no authority to make the contract as agent, and this court, in affirming the judgment, said: 'It was a question of fact submitted to the jury, whether the plaintiff in error had authority from the school board to make the contract as their agent. They found he had not. He was personally liable whether he made the contract in his own name or in the name of his alleged principal. It is a mistake to suppose that the only remedy was an action against him for the wrong. The party can elect to treat the agent as a principal in the contract.' "

Applying the principles here set forth, it seems to us that the defendant was liable to the plaintiffs. He believed that he had the authority to make the contract for insurance, as receiver of the bankrupt firm. He had no authority, because, as appears in his affidavit, he had no insurable interest, that is, as we understand it, the bankrupt firm for which he was receiver had no title to the property. It was doubtless his duty to ascertain just what he had to insure. He cannot visit the effects of his failure to do so upon the plaintiffs, upon whom no such obligation rested. To the same effect is Wolff v. Wilson, 28 Pa. Superior Ct. 511. See also Hopkins v. Everly, 150 Pa. 117.

The defendant seeks to shelter himself behind the direction of the referee in bankruptcy, but we cannot assent to the proposition that the plaintiffs are to suffer loss because the receiver failed to discharge his duty in ascertaining whether or not there was an insurable interest in the bankrupt estate which had been transferred to him, which he was under obligation to protect.

As between the plaintiffs and the defendant, the loss, if any, should fall upon the defendant, who, although guilty of no fraud or intentional misrepresentation, has, nevertheless, by his failure to ascertain what his rights and duties were, caused it.

Judgment affirmed.