## Pennsylvania Railroad Company v. Stouck-Reaser Company, Inc.

'William F. Zearfaus, Richard A. Brown, of Swope, Brown & Swope, and George Hay Kain and William H. Kain, of Kain, Kain & Kain, for plaintiff.

Franklin R. Bigham, of Keith, Bigham & Markley, for defendant.

SHEELY, P. J., March 18, 1944.—This matter is before the court on an affidavit of defense raising questions of law. Defendant ordered a consignment of lumber from Longbell Lumber Company and directed Longbell to arrange for its transportation from Longview, Wash., to defendant at Catawissa, Pa. The shipment was made by straight bill of lading in which defendant was named as consignee, and which provided that the owner or consignee should pay the charges. Defendant later directed plaintiff to deliver the shipment to Long's Lumber Company at Catawissa, Pa., "upon paying all charges". Plaintiff delivered the lumber to Long's Lumber Company as directed but, instead of requiring payment of all charges, extended credit to Long's Lumber Company. The lumber company was subsequently adjudicated a bankrupt and plaintiff received a dividend on account of its claim. This suit was then brought to recover the balance of the charges from defendant. Defendant denies liability for any part of plaintiff's claim.

Ordinarily there is no contractual relationship between the carrier and the consignee which obligates him to receive the goods or to pay the freight charges, and he is not liable therefor in the absence of an agreement express or implied. The consignee will be liable

for freight charges by acceptance of the goods shipped under a bill of lading which contains a stipulation that the consignee shall pay the freight, or any similar provision: Philadelphia & Reading Ry. Co. v. International Motor Co., 84 Pa. Superior Ct. 582, 584 (1925). Where the consignee directs the carrier to divert the shipment to another person, the diversion order is, in itself, such an act of dominion over the goods as to amount to an acceptance of the shipment, since the consignee thereby undertakes to control its further destination in the manner stated: West Jersey & Seashore R. R. Co. v. Whiting Lumber Co., 71 Pa. Superior Ct. 161 (1919) ; Baltimore & Ohio R. R. Co. v. L. B. Foster Co., 81 Pa. Superior Ct. 304 (1923) ; Pennsylvania R. R. Co. v. Rothstein et al., 116 Pa. Superior Ct. 156 (1935) ; Pennsylvania R. R. Co. v. Rubin et al., 130 Pa. Superior Ct. 578, 582 (1938). The doctrine of conditional acceptance of the goods as set forth in New York Central R. R. Co. v. Transamerican Petroleum Corp., 108 F. (2d) 994, 129 A. L. R. 206 (1939), has not been adopted in any of the Pennsylvania cases, and defendant itself acknowledges that, from the many Pennsylvania decisions dealing with the question of instructions by the consignee to deliver the goods to a third party, it would seem that the Pennsylvania courts have held such instructions do amount to an acceptance of the goods and, therefore, under the provisions of the bill of lading, the consignee would be bound to pay the freight charges.

Defendant contends, however, that it is relieved of liability for the freight charges because the diversion order amounted to an offer which the carrier, by its act of performance, accepted, and thus a contractual relation resulted, one of the terms of which was that the carrier would deliver the shipment only "upon paying all charges". We agree with defendant that the giving of instructions to the carrier to divert the shipment and its performance of those instructions created a contractual relationship between them. In Pennsylvania

R. R. Co. v. Rothstein et al., 116 Pa. Superior Ct. 156, 160, the court said:

"The diversion (or reconsignment) order is the only document which requires legal construction. Such an order, when acted upon by the carrier, constitutes a binding contract between the carrier and the one giving the order". See also Pennsylvania R. R. Co. v. Rubin et al., 130 Pa. Superior Ct. 578.

The question presented is the meaning and effect of the words "upon paying all charges" contained in this contract. These words, or words of similar import, used in connection with contracts dealing with the transportation of goods, were construed in Pennsylvania as early as 1840.

In Collins & Timberlake v. The Union Transportation Co., 10 Watts 384 (1840), goods were delivered to the carrier to be delivered to a named consignee "on presenting this receipt and payment of freight". The goods were delivered to the consignee without collecting the freight. The consignee later received the freight charges from the consignor but failed to pay the carrier. In a suit by the carrier against the consignor it was held that the latter was liable on the ground that the stipulation for delivery on payment of freight was not introduced for the benefit of the consignor. To the same effect is Layng v. Stewart, 1 W. & S. 222, 226 (1841), where goods were consigned by bill of lading containing the words "he [the consignee] paying freight". The reason for the rule is there stated to be that "no case has shown that the master is to keep his ship and sailors at expense in a foreign port, or a wagoner is bound to stay with his team, or hire a house in a distant town, until he tries a law suit". It may be that the reason for the rule no longer exists, but it was approved as late as 1926 in Director General of Railroads v. Birdsboro Stone Co., 86 Pa. Superior Ct. 587, 590. It was there pointed out that "the carrier has no right to designate

the consignee, nor has he any right to refuse to accept the goods until he has had an opportunity to inquire whether the consignee will receive them".

In Beecher et al. v. Reading Co., 22 D. & C. 364 (1935), Judge Houck of Schuylkill County had before him almost this identical situation. There the plaintiffs, as consignee, ordered the carrier to deliver the car of lumber "and collect the freight charges and all additional charges" from Puritan Coal Mining Company. The defendant carrier delivered the car but failed to collect the charges. Plaintiffs paid the freight and, after the coal mining company had become insolvent, sued defendant to recover the freight charges on the theory that by failing to collect the charges from the coal mining company defendant had made a wrongful delivery. It was held that the delivery was proper and that plaintiffs were liable for the charges.

The doctrine that the words "upon paying all charges", contained in bills of lading, are construed to be for the benefit of the carrier only and not for the benefit of the consignor or other persons so stipulating, is so well established in Pennsylvania that we are not at liberty to decide otherwise. Being a part of the common law of the State, that doctrine became a part of the contract entered into by defendant and plaintiff: Beaver County B. & L. Assn. v. Winowich et ux., 323 Pa. 483, 489 (1936). The result is that the inclusion of the words "upon paying all charges" in the diversion order did not have the effect of relieving defendant from liability for the freight charges, and it necessarily follows that plaintiff did not estop itself from collecting the charges from defendant by delivering the goods as it had a right to do.

Defendant relies largely upon the case of New York Central R. R. Co. v. Transamerican Petroleum Corp., 108 F. (2d.) 994, in which the court held that the consignee, under similar circumstances, was not liable for freight charges for two reasons: First, it did not be-

come liable for the charges by giving a conditional diversion order; and, second, it entered into a contractual relation with the carrier by which it was relieved of liability. We have shown by the cases heretofore cited that, in Pennsylvania, any diversion order is an act of dominion over the shipment which renders the person giving it liable for the freight charges, and that the doctrine of conditional acceptance is not recognized. We have also shown that while the acceptance of the diversion order by the carrier created a contractual relation under the Pennsylvania authorities, the words "upon payment of charges" were for the benefit of the carrier only.

Our conclusion is in harmony with The New York Central R. R. Co. v. Warren Ross Lumber Co., 234 N. Y. 261, 24 A. L. R. 1160, in which the facts were similar to the facts of the present case. It was there held that the usual stipulation in the bill of lading that the consignee shall pay the freight imposes no obligation on the carrier to insist upon payment of freight before delivery to the consignee, and that the liability of the consignee after giving a diversion order is analogous to the original liability of the consignor. It was further held that the giving of a diversion order was such an act of dominion over the goods as to amount to an acceptance, and that the directions to collect the freight from the ultimate receiver of the goods was for the benefit of the carrier only.

Having concluded that plaintiff's statement of claim makes out a good cause of action against defendant on the theory stated, we have not dealt with the other theories of liability advanced by plaintiff.

And now, March 18, 1944, defendant's affidavit of defense raising questions of law is overruled and defendant is directed to file an affidavit of defense to the merits within 15 days of this date.