## Tramontina et ux. v. Bacher

*F. Kenneth Moore*, for plaintiffs.

*Thos. B. M. Porter, Jr.*, for defendant.

KNIGHT, P. J., March 14, 1950.—Plaintiffs have a verdict of $221, and defendant filed a motion for judgment n. o. v.

Stating the facts in the light most favorable to plaintiffs, they are as follows:

One William W. Deissler owned a lot in the Village of Wyndmoor, in Springfield Township.

He placed this lot in the hands of the Bacher Company, real estate brokers, for sale.

Defendant, one of the partners of the Bacher Company, brought the lot to the attention of plaintiffs, who began negotiations for the purchase of the same.

During these negotiations, defendant told plaintiff wife that there was a water supply in the street on which the lot fronted:

Relying on this representation, plaintiffs signed a written agreement of sale, in which the Bacher Company, as agent for the owner, appeared as the seller, and plaintiffs were named as the buyers.

The owner, W. W. Deissler, approved of the agreement in writing.

Plaintiffs knew when they signed the agreement of sale that Deissler was the owner and that defendant was acting only as his agent.

Plaintiffs settled for the lot, and received a deed for the same.

About a year after receiving their deed plaintiffs began the construction of a house, and it was then discovered that there was no water supply in the street.

Plaintiffs were forced to connect their lot with the nearest water main, at a cost of $221, for the recovery of which this suit in assumpsit was brought against defendant.

Defendant denied that he had made any representations to plaintiffs in reference to the water supply.

It was not alleged or proved that defendant was guilty of any fraud.

The written agreement of sale contained no reference to a water supply, and further stated that it was the entire agreement between the parties, and that: "There are no collateral or oral agreements or understandings."

Defendant contends that plaintiffs are precluded by this agreement from making any claim by reason of the oral representation.

If this suit was based on the agreement, there would be more merit in this contention.

The parties to the written agreement were plaintiffs, and Deissler, the latter acting, it is true, through defendant, but, at all times plaintiffs knew that Deissler was the owner, and that defendant was acting merely as his agent. The liability of defendant, if any, did not

arise under the contract, but was an independent liability of the agent.

We are therefore of the opinion that the provision of the written agreement above quoted does not protect defendant.

It is next contended that, inasmuch as defendant acted throughout as the agent for a fully disclosed principal, and no fraud was alleged or proved, the principal is alone liable.

This would be true unless the agent did not have any authority to make the representation, or exceeded his authority in making it: Kroeger v. Pitcairn, 101 Pa. 311; Hopkins v. Everly, 150 Pa. 117.

If, however, the agent had authority to make the representation, or if it were within his apparent authority, then the principal and not the agent, would be liable: Marano v. Granata et al., 147 Pa. Superior Ct. 558, 561.

The trial judge left it to the jury to say if the representation was within the apparent authority of the agent, defendant, and the jury, by its verdict, found that it was not.

The question then narrows down to whether there was any evidence to support this finding.

We are of the opinion that the burden of proof was upon plaintiffs to show that, in making the representation, defendant acted beyond the scope of his authority.

Did they produce such proof? There is no direct evidence that defendant did not have authority to make the representation.

The lot purchased by plaintiffs was in a suburban section of Montgomery County, and in such a location, the question of whether the lot did or did not have a public water supply was highly important. The presence or absence of a public water supply would affect the price and desirability of the lot.

It was impossible to tell by an inspection of the lot whether it had a public water supply, for the pipe was under the ground.

Whether a lot has the advantage of public utilities is a matter peculiarly within the knowledge of the owner and his real estate broker. An owner would naturally give implied authority to his broker to point out and bring to the attention of a prospect all the advantages of a lot that he desired to sell to the prospect.

It therefore seems to us that defendant had apparent authority to make the representation on behalf of his principal; at least, there is no evidence upon which the jury could have based a finding that he had no authority to make the representation. We are therefore forced to the conclusion that this defendant is not personally liable to plaintiffs.

And now, March 14, 1950, the motion is allowed, and it is ordered and directed that judgment be entered for defendant, notwithstanding the verdict.