## McCormick v. Shuman (No. 2)

*Thomas J. Evans*, for plaintiffs.

*Howard R. Berninger* and *Donald A. Lewis*, for defendant.

KREISHER, P. J., May 9, 1958.— . . . The fifth reason [for judgment n. o. v.] that "the verdict is against the law" presents a more difficult question, and counsel for defendant at the oral argument stated their proposition to be "purely a question of law" and that is the reason the motion for judgment n. o. v. was not accompanied with a motion for a new trial.

Counsel for defendant took this same proposition when they filed their preliminary objections to plaintiffs' complaint as their fourth objection was captioned demurrer.

It was for this reason that the court in the said opinion filed February 18, 1957, 11 D. & C. 2d 88, 92, quoted at length from authorities on the subject and dismissed the demurrer.

Beginning on page four of the opinion, we stated, inter alia, the following:

"In 16 Appleman, Insurance Law and Practice, sec. 8841, p. 300, it is said:

" 'An insurance broker is the agent of the insured in negotiating for a policy, and owes a duty to his principal to exercise reasonable skill, care and diligence in effecting insurance. While such broker is not obligated to assume the duty of procuring a policy, without consideration for his promise, he must exercise ordinary care in the performance of such duty when assumed, the promise to take the policy being a sufficient consideration. . . .

" 'If a broker or agent of the insured neglects to procure insurance, or does not follow instructions, or if the policy is void or materially defective, through the agent's fault, he is liable to his principal for any loss he may have sustained thereby. If the agent or broker fails to act with the proper and customary skill and care generally used by those in a like business, such neglect or breach of duty will render him liable in damages, *not exceeding the amount of insurance he was employed to effect*. Connecticut has pointed out that such principal may sue either for breach of contract or in tort for a breach of duty.

" 'It is generally considered that if the neglect or breach of duty of such broker results in loss to his principal, the broker is liable to the same extent as the

insurer would have been liable had the insurance been properly effected, and must pay the resulting loss.'

"To the same effect are *1 Cooley's Briefs on Insurance (2nd ed., 1927) 452, 2 Couch, Cyclopedia of Insurance Law, section 481* . . ."

In Volume 1, Law of Insurance in Pennsylvania, by Goldin, sec. 128, p. 80, it is stated:

"A broker of insurance assumes to have the requisite knowledge and ability to transact the business for his patrons, and are bound to use reasonable skill, care and diligence. Failure to do this, resulting in a loss to the insured such broker is liable to the insured for the loss so sustained."

Like statements are found in 44 C. J. S. §172. In section 141, it is stated:

"The general rule that the same person cannot act as agent for both the company and insured is subject to some exceptions. The same person may act for the different principals in separate matters in which their interests are not conflicting and his duties not inconsistent. It is possible for an insurance broker, although first employed by one party to the insurance contract, to become during the progress of the negotiations the agent of the other; and in that event he may acquire rights, have powers, and incur obligations respecting both insurer and insured. The same person may be both an insurance agent and an insurance broker, and at different times act in both capacities; he may be the agent for insured, although as to the procuring of the insurance he also represents the company.

"Whether in a particular case or particular matter one acts as agent for the company or for insured depends on the intention of the parties, which is to be determined from the facts and circumstances of the case."

In the case of Walker v. Black, 216 Pa. 395, in a per curiam opinion, a verdict against an insurance

agent for negligence was affirmed stating that the question of defendant's negligence was strictly a matter for the jury.

In the early and oft referred to case of Kroeger v. Pitcairn, 101 Pa. 311, Mr. Justice Sterrett, in delivering the opinion of the above, referring to cases in which agents have been adjudged liable personally, made the following classifications:

"1st. Where the agent makes a false representation of his authority with intent to deceive. 2nd. Where, with knowledge of his want of authority, but without intending any fraud, he assumes to act as though he were fully authorized; and, 3rd. Where he undertakes to act, bona fide believing he has authority, but in fact has none, as in the case of an agent acting under a forged power of attorney. As to cases fairly brought within either of the first two classes there cannot be any doubt as to the personal liability of the self-constituted agent; and his liability may be enforced either by an action on the case for deceit, or by electing to treat him as principal. While the liability of agents, in cases belonging to the third class, has sometimes been doubted, the weight of authority appears to be that they are also liable. In Story on Agency, the learned author, recognizing the undoubted liability of those belonging to the first two classes, says, 'Another case may be put which may seem to admit of some doubt, and that is where the party undertakes to act as agent for the principal, bona fide believing he has due authority, and therefore acts under an innocent mistake. In this last case, however, the agent is held by law to be equally as responsible as he is in the two former cases, although he is guilty of no intentional fraud or moral turpitude. This whole doctrine proceeds upon a plain principle of justice; for every person, so acting for another, by a natural if not a

necessary implication holds himself out as having competent authority to do the act; and he thereby draws the other party into a reciprocal engagement. If he has no such authority and acts bona fide, still he does a wrong to the other party; and if that wrong produces injury to the latter, owing to his confidence in the truth of an express or implied assertion of authority by the agent, it is perfectly just that he who makes such assertion should be personally responsible for the consequences, rather than that the injury should be borne by the other party who has been misled by it'."

In the recent case of Kraftsow v. Brown, 172 Pa. Superior Ct. 581, the verdict for plaintiff against defendant insurance agent for negligence was affirmed and the opinion by Dithrich, J., indicates that the personal liability of an insurance agent for negligence was taken for granted as the whole context of the opinion is directed to the validity of the insurance policy in the event the agent had not been negligent.

In the case of Rossi v. Firemen's Insurance Company, 310 Pa. 242, it was held that an insurance agent, who had outstanding insurance policies with his clients, upon receiving notice that the company became insolvent could make a binding contract with a solvent company for his clients without their authorization, and by inference, it is indicated that an insurance agent should either pursue this course to protect his clients, or at least notify his clients that their insurance which he procured for them was no longer valid and that the company was insolvent. On page 249 of the opinion, the court, in discussing the authority of the agent to rewrite insurance for his clients without their authority, quoted as follows:

"Furthermore, it was testified by several witnesses without contradiction, that it was the universal and notorious custom of insurance agents to rewrite in solvent companies, without notifying their customers,

risks the policies upon which had been rendered worthless by the insolvency of the insurer."

Now, in the light of the foregoing principles, we have the following undisputed facts since defendant filed no answer to the complaint and introduced no testimony in defense.

During the year 1953, Jacob McCormick and wife purchased a house and lot in Mount Pleasant Township, this county.

On August 24th, they went to the office of defendant who conducts a flourishing and old established insurance agency and real estate office. Thereupon, they informed defendant of their purchase and requested that their home be insured against loss by fire, whereupon defendant caused to be issued an insurance policy in the amount of $2,000 for a premium of $14 with the Valley Forge Mutual Insurance Company of Philadelphia.

On January 30, 1954, at plaintiffs' request, defendant, in consideration of an additional premium of $17.96, added $1,000 to item one of the policy making a total of $3,000 on the dwelling, and $2,000 to item two of the policy making a total of $2,000 on the household contents in said dwelling.

On August 24, 1954, defendant, at plaintiffs' special request, changed the loss payable mortgage clause from the Bloomsburg Bank-Columbia Trust Company, mortgagee, to Aaron M. Wolfe and wife as mortgagees, since plaintiffs had refinanced their property in order to make considerable repairs to the structure and for the purchase of certain furniture and fixtures.

On September 27, 1954, the Pennsylvania Insurance Commissioner suspended the Valley Forge Mutual Insurance Company of Philadelphia from doing business in Pennsylvania because of substantial financial deficits as of December 31, 1953.

A witness from the Pennsylvania Insurance Department bearing the title of Insurance Company Policy Examination Supervisor testified from personal knowledge, as well as from the official records of the insurance commissioner, that a letter containing the order of suspension by the commissioner was sent to the Valley Forge Mutual Insurance Company with directions to notify all agents of the company of said suspension order.

The Insurance Department Act of May 17, 1921, P. L. 789, 40 PS §231, etc., requires each insurance company to file with the Pennsylvania Insurance Commissioner a list of their agents within the Commonwealth.

The said witness from the Insurance Department also testified that the company is still suspended from doing business and that legal proceedings for the liquidation of the company are pending in the Dauphin County Court.

He further testified that as of August 31, 1955, the company possessed admitted assets amounting to $13,636.95, and liabilities of $69,274.36, making a deficit of $55,637.41.

The complaint as filed in paragraph eight states:

"The defendant was notified of the action taken by the Pennsylvania Insurance Commissioner."

Since defendant failed to deny this allegation by filing an answer or by taking the witness stand and denying the allegation, it would seem to follow that he did receive notice of the action taken against the company by the insurance commissioner. He did not, however, communicate this information to plaintiff nor did he rewrite plaintiffs' insurance in a solvent company.

On December 25, 1954, during plaintiffs' absence, their entire home and contents were destroyed by a fire of unknown origin.

Plaintiffs immediately notified defendant of their loss at which time defendant directed plaintiffs to file a proof of loss assuring them that they would recover without any difficulty and still failed to mention the financial status of the company or the suspension order.

On June 2, 1955, after plaintiffs had continually harrassed defendant with regard to the settlement of their insurance claim without result, they wrote to the Pennsylvania Insurance Department at Harrisburg and thereafter received the reply informing them for the first time of the company's suspension.

They were on occasion asked by defendant to be patient and assured that some settlement would be forthcoming sometime in the future.

Finally, on June 28, 1956, plaintiffs filed the above captioned complaint in trespass and the matter was tried before a jury on October 14, 1957.

At the close of plaintiffs' testimony, counsel for defendant made a motion for a nonsuit and a motion for a directed verdict. These motions were overruled by the court at which time defendant rested, and the court was of the opinion at that time that there was sufficient evidence of negligence to submit the case to the jury and we are still of the same opinion and, therefore, conclude that the verdict is not against the law.

Now, taking up the additional specific reasons assigned by defendant for judgment n. o. v., number five states that plaintiffs failed to estimate the value of the building destroyed by the fire.

We conclude that this reason is without merit because the testimony of both Mr. McCormick and his wife beginning at the bottom of page 12 of the notes of testimony clearly shows that the dwelling had a fair market value of more than $3,000 and that the contents had a fair market value of $2,889.49, which is almost $900 more than the $2,000 insurance.

As a matter of fact, plaintiffs testified that insurance on the dwelling was increased from $2,000 to $3,000 at defendant's suggestion because in his opinion $2,000 was inadequate insurance for their dwelling.

It is not necessary that an expert be called to testify as to the value of the property destroyed as we find in Volume 1, Law of Insurance in Pennsylvania, by Goldin, in the cumulative supplement of 1958 to section 354, the following statement:

"Plaintiff is qualified to give an opinion of the value of all the articles damaged by reason of his relationship as owner and to give estimates of value of what he owns regardless of his knowledge of property values, and the weight of such evidence is for the jury."

In the case of Czerwinski v. National-Ben Franklin Fire Insurance Co., 138 Pa. Superior Ct. 84, at page 90, it is stated:

"There is no merit either to the contention of the appellants that the plaintiff failed to offer the proof of loss in evidence, for the reason that said proof of loss was in the hands of defendants' counsel who could, if he thought same material, offer the proof of loss on his side of the case."

There is testimony in the present case that defendant directed plaintiffs to file their proofs of loss promptly with him and that they did so.

Likewise, if defendant chose to challenge the value of plaintiff's property, they could have called their expert witnesses for the jury's consideration.

The sixth reason setting forth that there is no evidence showing that defendant ever received notice of the suspension order has already been referred to. There again, if defendant chose to defend upon this ground, there was nothing to keep him from taking the witness stand and so testifying, or at least filing an answer to the complaint and denying the allegation therein contained.

The remaining nine reasons all relate to alleged errors of the court in its charge.

We have reread this charge to the jury and have fully considered the attacks made thereto by counsel for defendant and have concluded that the court impartially, fairly and in accordance with the facts and the law submitted the question in issue to this jury and, therefore, we do not deem it necessary to take up these alleged errors separately because our theory of the case remains the same at present as it was at the time we charged the jury and the questions of whether or not there is actionable negligence, agency, sufficient definitions, prejudice or bias are in our opinion all without merit and we conclude that the same may all be dismissed as not proper reasons for the setting aside of the jury's verdict.

The remaining argument of counsel that sometime in the future upon final liquidation of this company that plaintiffs may be entitled to a certain dividend which at the present time is very vague and indefinite, is in our opinion of no moment for the reasons that any rights which plaintiffs might have against the insolvent company would enure to the benefit of defendant upon his payment of the judgment under the right of subrogation.

Likewise, the argument of counsel for defendant that there was no testimony offered by plaintiffs to show usage or custom in cases of this nature and that defendant's duty towards plaintiffs ceased the moment the policy was delivered, it being admitted that at that time the company was authorized to do business in Pennsylvania, is in our opinion not sufficient grounds to set aside the verdict of this jury.

It is the court's opinion that defendant had full knowledge of the financial condition of this company and that he chose to gamble that no fires would occur

during the term of the outstanding policy and that by doing so he subjected himself to personal liability, which in our opinion could have been easily and promptly avoided by a mere letter or postcard to his policyholders that the company in which they were insured was suspended from doing business because of insolvency.

By reasons of the frailties of human nature and the manner in which the average American businessman conducts his business and deals with his insurance agent, he reposes great trust and confidence in that agent and leaves the entire matter of his continued insurance protection in the agent's hands knowing that in the usual and ordinary course of events, if for one reason or another his protection is terminated, that that agent will immediately notify him and seek to secure his complete protection by some other method or at least give that businessman an opportunity to do so.

To subscribe to the allegation of counsel for defendant that all duties and obligations of an insurance agent cease upon receipt of the premium and delivery of the policy is to us much too strict and not a reality in accordance with the manner of everyday business.

The argument of counsel for defendant that defendant's only duty was that of procuring for plaintiffs a policy of insurance in a solvent company and upon delivery of the policy he is excused from any further performance on the part of his clients because he receives no consideration for the continued duty, is in our opinion placing too great a burden upon the policyholder and not in accordance with the accepted practice.

There are cases on the subject that seem to indicate an insurance agent acts in a dual capacity, that the law will impose upon him the duty of using ordinary care and diligence in the protection of his client, and

it is said that the trust and confidence reposed by the policyholder in the insurance agent affords a sufficient consideration for the undertaking and carrying out of not only the expressed instructions, but also those ordinary and usual implied instructions which we in our busy lives have come to take for granted.

An insurance agent today, when he procures a policy of insurance for his client, not only anticipates the consideration of the premium for the first policy delivered, but he likewise looks forward to the premium to be received for the renewal of that policy, and as a matter of common practice, we are all familiar with the custom of receiving a bill in mail for the premium to renew a policy about to expire 30 days hence.

It is safe to say that if the average person did not receive this notice and service from his insurance agent, he would not know when his current policy expired, and insurance agents have lulled us into this sense of security to the end that we have become dependent upon them for this notification and protection, and then to say that after depending upon this confidence reposed, that the agent may breach the same by a mere whim, oversight, inadvertence or even perhaps for some diabolical reason and escape liability from disaster that results, does not seem to us to be in accordance with our system of law and order.

It seems to us under these circumstances defendant had not only the legal duty, but the moral duty to so notify his clients in order to relieve himself of personal liability and that justice requires his failure to so act makes him liable, and therefore, we enter the following

### Order

And now, to wit, May 9, 1958, defendant's motion for judgment n. o. v. is dismissed and the prothonotary is directed upon payment of the $4 jury fee to enter judgment upon the verdict.

And now, to wit, May 9, 1958, upon motion of Donald A. Lewis, Esq., and Howard R. Berninger, Esq.; attorneys for defendant, exceptions noted and bills sealed.